IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN DAMON BARTH,<br><br>   Plaintiff,<br><br>   v.<br><br>ROMERO, et al.,<br><br>   Defendants. | No. 2:19-CV-0891-JAM-DMC-P<br><br><br>ORDER |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's second amended complaint, ECF No. 19.[1]

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover,

---

[1] After Plaintiff filed his original complaint, Plaintiff filed a first amended complaint as of right. See ECF No. 6. The Court dismissed the first amended complaint with leave to amend and directed Plaintiff to file a second amended complaint. See ECF No. 10. Plaintiff filed a second amended complaint, see ECF No. 19, and, without leave of Court, a third amended complaint shortly thereafter, see ECF No. 20. Because Plaintiff's third amended complaint was filed without leave of Court, it will be stricken. This action proceeds on the second amended complaint.

the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

In his second amended complaint, Plaintiff names the following as defendants: (1) Romero; (2) Mey; (3) Davis; (4) Tsai; (5) Bell; (6) Lomas; (7) Snyder; (8) Mohr; and (9) Deo. See ECF No. 19, pgs. 6-12.

Summary of Factual Allegations

Plaintiff's factual allegations are set forth at paragraphs 22 through 57 of the second amended complaint. See id. at 12-16.

Plaintiff states that, immediately after his arrival at Mule Creek State Prison on September 7, 2018, he was "singled out and deprived of his legal property." Id. at 12. It appears Plaintiff claims Defendant Romero took his property. See id. Plaintiff asserts that, on September 12, 2018, he received his legal paperwork. See id. Plaintiff states that he did not, however, receive an LED plug-in lamp, headphones, and a personal fan, apparently also taken by Romero. See id.

Plaintiff states that, on September 18, 2018, he was denied his legal documents "for a committee hearing." Id. He does not allege who is responsible for this.

///

///

Next, Plaintiff claims that Defendant Mey gave Plaintiff a "false mental health referral" on September 25, 2018. Id. Plaintiff also claims that, on this same day, Defendant Mey "incited other inmates to harm the Plaintiff." Id. Plaintiff does not further explain this claim.

Plaintiff alleges that, on September 27, 2018, his cellmate informed correction staff that Plaintiff was having an asthma attack but that no medical care was provided. See id. at 12-13. Again, Plaintiff does not say who denied him medical care.

On October 2, 2018, Plaintiff attended a deposition on "a civil criminal complaint." Id. at 13. According to Plaintiff, immediately afterward he was "retaliated against." Id. Specifically, Plaintiff claims that over the course of the following 30 days, he was issued five fabricated rules violation reports and subject to seven "cell thrashing searches." Id. Plaintiff does not name the individuals allegedly responsible for these adverse actions.

Plaintiff next describes further alleged conduct by Defendant Mey:

October 6, 2018 – Mey searched and "trashed" Plaintiff's cell and confiscated Plaintiff's electric shaver. Id.

October 7, 2018 – Mey denied Plaintiff access to a medical appointment. Mey also denied Plaintiff the ability to send outgoing legal mail. See id.

October 11, 2018 – Mey denied Plaintiff a breathing treatment while Plaintiff was having an asthma attack. See id.

October 14, 2018 – Mey denied Plaintiff the ability to send outgoing legal mail and threatened Plaintiff. See id.

October 3, 2018, to December 15, 2018 – Mey refused to sign outgoing legal mail and forms for inmate interviews. See id. at 14.

October 21, 2018 – Mey closed the "sally port" door as Plaintiff was being released for pill call. Mey issued Plaintiff a rules violation report for tapping on the sally port door. Id.

October 31, 2018 – Mey (and Defendant Lomas) refused to send out Plaintiff's legal mail. See id.

November 14, 2018 – Mey told Plaintiff he would end up like Duran, referring to an inmate who had been "pepper-sprayed to death" at Mule Creek State Prison in 2013. Id. at 14-15.

November 21, 2018 – Mey singled Plaintiff out by refusing him access to the law library despite Plaintiff's PLU status. See id. at 15.

///

1          Plaintiff states that he was denied an "ADA shower" on October 8, 2018, and

2   again on October 21, 2018.  See id. at 13-14.  Plaintiff does not state who was responsible.

3          According to Plaintiff, he was also denied law library and priority legal user (PLU)

4   status on October 21, 2018.  See id. at 14.  Plaintiff does not, however, allege who is responsible.

5          Next, Plaintiff claims that, in October and November 2018, he was not allowed

6   access to his cell after receiving medications even though he was "closed custody."  Id.  He also

7   claims that, between October 2, 2018, and November 30, 2018, "C/O's" allowed Plaintiff to be

8   abused, ridiculed, harassed, insulted, threatened, denied, and locked out.  See id. at 15.  As is

9   common throughout the second amended complaint, Plaintiff does not identify which defendant is

10  responsible for this.

11         Plaintiff states that he was locked outside of the building with wildfires burning on

12  November 13, 2018.  See id. at 14.  Plaintiff claims this exacerbated his asthma.  See id.  Plaintiff

13  does not say who locked him outside.

14         Next, Plaintiff states that Defendant Tsai searched and "trashed" his cell on

15  November 23, 2018, and took down Plaintiff's clotheslines.  See id. at 15.

16         According to Plaintiff, on November 24, 2018, Defendant Snyder conducted a

17  rules violation hearing based on a charge relating to what Plaintiff calls a "privacy curtain."  Id.

18  Plaintiff alleges Defendant Snyder "denied the fact that Plaintiff was ADA and physically could

19  not install the curtain."  Id.

20         Plaintiff asserts that, on November 27, 2018, Defendant Lomas "took food from

21  his [Plaintiff's] person as he tried to enter his cell after chow."  Id. at 15-16.

22         Plaintiff claims that, on November 28, 2018, the "tower officer" refused to let

23  Plaintiff back in the building and that an unnamed "C/O" refused to let Plaintiff back in his cell

24  and then yelled out the tower window Plaintiff's criminal charges, thereby endangering his safety.

25  Id. at 15.

26         Next, Plaintiff claims that Defendant Bell would not allow him into the building

27  after pill call on November 27, 2018.  See id. at 16.  Plaintiff states he was left standing outside in

28  the rain while all other inmates were allowed inside.  See id.

4

Finally, Plaintiff claims that Defendant Deo denied Plaintiff due process at his "committee hearing." Plaintiff does not further elaborate on this claim with any factual detail. See id.

Summary of Claims Asserted

According to Plaintiff, the foregoing factual allegations give rise to the following legal claims:

Claim I  Retaliation.[2]  See id. at 16-17.
Claim II  Denial of Access to the Courts.  See id. at 17-18.
Claim III  Conditions of Confinement.[3]  See id. at 18-21.

## II. DISCUSSION

According to Plaintiff, his factual allegations give rise to claims of retaliation, denial of access to the courts, and violations related to the conditions of his confinement. The Court finds Plaintiff's second amended complaint suffers from a number of flaws, discussed below.

**A.  Causal Link**

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth

---

[2] While Plaintiff references the Eighth Amendment in Claim I, he alleges "ongoing retaliation" following the deposition. See ECF No. 19, pg. 17.
[3] Again, while Plaintiff references the Fourteenth Amendment and due process in Claim III, he alleges facts implicating conditions of confinement violations under the Eighth Amendment. See id. at 19-20

specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Initially, the Court observes that Plaintiff alleges various facts suggesting constitutional violations consistent with the legal theories raised but does not link a violation to a named defendant. For example, Plaintiff alleges that he was denied medical care for an asthma attack on September 27, 2018, but does not say by whom. See ECF No. 19, pgs. 12-13. Similarly, Plaintiff claims that, after he attended a deposition on October 2, 2018, he was subjected to retaliation but does not say by whom. See id. at 13. To the extent Plaintiff does not connect a particular defendant to a specific factual allegation, Plaintiff does not state a claim.

Turning to the specific allegations as to named individuals, Plaintiff names nine individual defendants. The factual allegations as to each are as follows:

| | | |
|---|---|---|
| Romero | | Took Plaintiff's property upon arriving at Mule Creek State Prison on September 7, 2018. See ECF No. 19, pg. 12. |
| Mey | | Gave Plaintiff a "false mental health referral" and "incited other inmates to harm the Plaintiff" on September 25, 2018. Id. |
| | | Searched and "trashed" Plaintiff's cell and confiscated Plaintiff's electric shaver on October 6, 2018. Id. at 13. |
| | | Denied Plaintiff access to a medical appointment and denied Plaintiff the ability to send outgoing legal mail on October 7, 2018. See id. |
| | | Denied Plaintiff a breathing treatment while Plaintiff was having an asthma attack on October 11, 2018. See id. |
| | | Denied Plaintiff the ability to send outgoing legal mail and threatened Plaintiff on October 14, 2018. See id. |
| | | Refused to sign outgoing legal mail and forms for inmate interviews between October 3, 2018, and December 15, 2018. See id. at 14. |
| | | Closed the "sally port" door as Plaintiff was being released for pill call. Mey issued Plaintiff a rules violation report for tapping on the sally port door on October 21, 2018. Id. |
| | | Refused to send out Plaintiff's legal mail on October 31, 2018. See id. |
| | | Told Plaintiff on November 14, 2018, he would end up like Duran, referring to an inmate who had been "pepper-sprayed to death" at Mule Creek State Prison in 2013. Id. at 14-15. |

|  |  |  |
|---|---|---|
|  |  | Singled Plaintiff out on November 21, 2018, by refusing him access to the law library despite Plaintiff's PLU status. See id. at 15. |
|  | Davis | Second amended complaint contains no factual allegations. |
|  | Tsai | Searched and "trashed" Plaintiff's cell and took down Plaintiff's clotheslines on November 23, 2018. See id. at 15. |
|  | Bell | Would not allow him into the building after pill call on November 27, 2018, leaving Plaintiff standing outside in the rain while all other inmates were allowed inside. See id. |
|  | Lomas | "[T]ook food from his [Plaintiff's] person as he tried to enter his cell after chow" on November 27, 2018. Id. at 15-16. |
|  |  | Refused to send out Plaintiff's legal mail on October 31, 2018. See id. at 14. |
|  | Snyder | Conducted a rules violation hearing on November 24, 2018, based on a charge relating to what Plaintiff calls a "privacy curtain" and "denied the fact that Plaintiff was ADA and physically could not install the curtain." Id. at 15. |
|  | Mohr | Second amended complaint contains no factual allegations. |
|  | Deo | Denied Plaintiff due process at his "committee hearing." See id. at 16. |

Plaintiff's second amended complaint fails to establish a link between any constitutional violation and Defendants Mohr and Davis because it contains no factual allegations specifically against them. Plaintiff will be provided an opportunity to amend. As to the remaining defendants, Plaintiff fails to allege a sufficient link to a cognizable claim, as discussed below.[4]

**B.    First Amendment Claims**

In Claim I, Plaintiff alleges retaliation in violation of the First Amendment. In Claim II, Plaintiff alleges denial of access to the courts, also in violation of the First Amendment.

/ / /

/ / /

/ / /

---

[4] The Court's remaining analysis centers on the categories of legal claims alleged in the second amended complaint. To the extent Plaintiff alleges facts suggesting other legal theories, the Court does not consider them.

7

        1.       Retaliation

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989). The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct. See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005). Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials took adverse action against the inmate; (2) the adverse action was taken because the inmate engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment rights; and (4) the adverse action did not serve a legitimate penological purpose. See Rhodes, 408 F.3d at 568.

Here, the only alleged protected activity is Plaintiff testifying at a deposition on October 2, 2018. To the extent Plaintiff alleges adverse actions taken prior to this date, he cannot show that such action occurred because of protected activity which took place afterward. While Plaintiff alleges a number of adverse consequences taken after the deposition, he cannot show that such action occurred because of protected activity because he does not allege any defendant was aware he offered deposition testimony on October 2, 2018. Finally, Plaintiff fails to allege that the various adverse actions taken did not serve a legitimate penological interest. Plaintiff will be provided an opportunity to amend.

        2.       Access to the Courts

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right includes petitioning the government through the prison grievance process.

8

1  See id.  Prison officials are required to "assist inmates in the preparation and filing of meaningful
2  legal papers by providing prisoners with adequate law libraries or adequate assistance from
3  persons trained in the law."  Bounds, 430 U.S. at 828.  The right of access to the courts, however,
4  only requires that prisoners have the capability of bringing challenges to sentences or conditions
5  of confinement.  See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous
6  criminal appeals, habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55.
7  Therefore, the right of access to the courts is only a right to present these kinds of claims to the
8  court, and not a right to discover claims or to litigate them effectively once filed.  See id. at 354-
9  55.

10  As a jurisdictional requirement flowing from the standing doctrine, the prisoner
11  must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to
12  contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-
13  frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).  Delays in
14  providing legal materials or assistance which result in prejudice are "not of constitutional
15  significance" if the delay is reasonably related to legitimate penological purposes.  Lewis, 518
16  U.S. at 362.

17  Here, Plaintiff has not stated a cognizable claim for denial of access to the courts
18  because Plaintiff has not alleged an actual injury as a result of any of the defendants' conduct.
19  Though Plaintiff has alleged various instances where he was not permitted to send legal mail, he
20  does not allege that he was prejudiced with respect to contemplated or existing litigation.
21  Moreover, in many instances where Plaintiff has alleged some sort of potential interference with
22  his access to the courts, Plaintiff does not state which defendant is responsible.  Plaintiff will be
23  provided an opportunity to amend.

24        **C.**     **Conditions of Confinement Claims**

25  In his second amended complaint, Plaintiff alleges the facts give rise to various
26  claims related to the conditions of his confinement.  Specifically, Plaintiff alleges violations
27  related to life's necessities in general, safety, and medical care.  Each is discussed below.
28  ///

          1.     Life's Necessities

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Plaintiff alleges the following facts with respect to his basic necessities of life:

- Between October 2, 2018, and November 30, 2018, "C/O's" allowed Plaintiff to be abused, ridiculed, harassed, insulted, threatened, denied, and locked out. See ECF No. 19, pg. 15.

- Plaintiff states that he was locked outside of the building with wildfires burning on November 13, 2018. See id. at 14.

- Defendant Bell would not allow him into the building after pill call on November 27, 2018. See id. at 16. Plaintiff states he was left standing outside in the rain while all other inmates were allowed inside. See id.

Plaintiff fails to state any claim based on denial of basic life necessities because he does not link any particular allegation to a named defendant. Plaintiff does not state who the "C/O's" are who allegedly abused and harassed him. Nor does Plaintiff identify who left him outside during a wildfire on November 13, 2018, or who left him standing in the rain on November 27, 2018. Plaintiff will be provided an opportunity to amend.

///

    2.  <u>Safety</u>

    Under principles outlined above, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. <u>See</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1250-51 (9th Cir. 1982); <u>Farmer</u>, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. <u>See</u> <u>Farmer</u>, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. <u>See</u> <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. <u>See</u> <u>Farmer</u>, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. <u>See</u> <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. <u>See</u> <u>Farmer</u>, 511 U.S. at 844.

    As to his safety, Plaintiff alleges:

- Defendant Mey "incited other inmates to harm the Plaintiff." <u>Id.</u> at 12.

- Plaintiff claims that, on November 28, 2018, the "tower officer" refused to let Plaintiff back in the building and that an unnamed "C/O" refused to let Plaintiff back in his cell and then yelled out the tower window Plaintiff's criminal charges, thereby endangering his safety. <u>Id.</u> at 15.

    Plaintiff's allegation against Defendant Mey is insufficient to state an Eighth Amendment safety claim because he does not identify how the defendant allegedly incited other inmates to harm him. Plaintiff's claims related to a "tower officer" and an unidentified "C/O" also fail to state a claim because the individuals involved are not named. Plaintiff will be provided an opportunity to amend.

/ / /

/ / /

/ / /

11

### 3. Medical Care

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

///

1    Plaintiff alleges various facts related to his medical needs.  Specifically, Plaintiff
2    claims.

3    - On September 27, 2018, his cellmate informed correction staff that Plaintiff was
4    having an asthma attack but that no medical care was provided.  See id. at 12-13.

5    - Defendant denied Plaintiff access to a medical appointment on October 7, 2018.
     See id. at 13.

6    - Defendant Mey denied Plaintiff a breathing treatment while Plaintiff was having
7    an asthma attack on October 11, 2018.  See id.

8    - Plaintiff was denied an "ADA shower" on October 8, 2018, and again on October
     21, 2018.  See id. at 13-14.

9    Here, the Court finds that Plaintiff states an Eighth Amendment medical care claim
10   against Defendant Mey based on Plaintiff's allegation that Defendant Mey denied him "a
11   breathing treatment" while Plaintiff was having an asthma attack on October 11, 2018.

12   Plaintiff does not otherwise state a medical care claim.  His allegations related to
13   September 27, 2018, October 7, 2018, and October 8, 2018, are insufficient because he does not
14   identify a responsible defendant.  Plaintiff will be provided an opportunity to amend.

15

16   ### III.  CONCLUSION

17   Because it is possible that the deficiencies identified in this order may be cured by
18   amending the complaint, plaintiff is entitled to leave to amend.  See Lopez v. Smith, 203 F.3d
19   1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an
20   amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258,
21   1262 (9th Cir. 1992).  Therefore, if plaintiff amends the complaint, the court cannot refer to the
22   prior pleading in order to make plaintiff's amended complaint complete.  See Local Rule 220.  An
23   amended complaint must be complete in itself without reference to any prior pleading.  See id.

24   If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the
25   conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See
26   Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how
27   each named defendant is involved, and must set forth some affirmative link or connection
28   between each defendant's actions and the claimed deprivation.  See May v. Enomoto, 633 F.2d

164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because the complaint appears to otherwise state a cognizable claim, specifically Plaintiff's Eighth Amendment medical care claim against Defendant Mey based on denial of a breathing treatment on October 11, 2018, if no amended complaint is filed within the time allowed therefor, the court will issue findings and recommendations that the claims identified herein as defective be dismissed, as well as such further orders as are necessary for service of process as to the cognizable claim against Defendant Mey.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's third amended complaint, ECF No. 20, filed after the second amended complaint, is stricken as having been filed without leave of Court; and

2. Though the Court finds that the action may proceed on the second amended complaint on Plaintiff's Eighth Amendment medical care claim against Defendant Mey based on denial of a breathing treatment on October 11, 2018, Plaintiff may file a third amended complaint within 30 days of the date of service of this order to correct the defects identified herein.

Dated: March 23, 2021

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14